KINGS COUNTY.—HON. J. I. BERGEN, SURROGATE.—
December, 1884.

TAYLOR *v.* WARDLAW

*In the matter of the probate of the will of* MARY J.
TAYLOR, *deceased.*

The document propounded as decedent's will was in the handwriting of W., one of the subscribing witnesses, who was not a lawyer, and was written upon two pages of note paper, in three divisions, as follows : (1) Near the end of the first page was decedent's name with the words "her mark" under it, in the draughtsman's handwriting, and, immediately under this, decedent's signature. To the left were the signatures of W. and R., and the date. (2) On the next page, what purported to be a codicil to the will, dated the same day, was executed in a similar manner. (3) And, immediately following, was the clause, "I appoint W. my executor," similarly subscribed, and witnessed by R. and M. The testimony, though somewhat conflicting, showed a substantial compliance with the statutory requirements as to publication. It appeared that the draughtsman expected the decedent to make her mark, which, however, she declined to do, writing her name, instead; and that the codicillary matter and the executorial appointment were originally omitted by inadvertence, and the omissions successively supplied.—

*Held,* that the paper, though inartificially drawn, constituted one harmonious will—even the last execution being sufficient;—and that the same was entitled to probate.

CONTEST over the application for probate of decedent's will. The facts are stated in the opinion.

D. & T. McMAHON, *for proponent.*

WM. D. VEEDER, *for contestant.*

THE SURROGATE.—The testatrix resided in the city of Brooklyn, and died October 17th, 1884, leaving a will dated two days previously. She left no husband and but one son, John Taylor, her only heir at law, who contests the will, alleging 1st, that at the time of the execution, the testatrix was not of sound mind and memory, and did not possess testamentary capacity; 2d, that the paper writing propounded was not executed according to law; and 3d, the same was not the last will and testament of deceased. The contestant offered no testimony in support of his allegations, but rested his case upon the testimony submitted by the proponents.

I am satisfied, from the evidence of the subscribing witnesses and the family physician, that the testatrix was possessed of testamentary capacity, and that she was not unduly influenced in the making and execution of her will. For while all the witnesses agree that she was in weak and feeble health, still she understood perfectly what she was doing, the nature of her property, and the claims which her relatives and friends had upon her bounty. She directed Mrs. Murphy where to get pen, ink and paper, and knew what pair of spectacles she wanted, and told Mrs. Murphy where she could find them. Also, Mrs. Murphy testified that testatrix conversed with her all the afternoon, about general matters, until the arrival of Messrs. Wardlaw and Rouss. The only question remaining to be determined is, whether the paper writing submitted for probate was executed according to law, so as to entitle it to be admitted to probate as the last will and testament of testatrix.

From the evidence it appears that the will was in the handwriting of James Wardlaw, one of the subscribing witnesses, and is all embraced on two pages of note paper.   Near the end of the first page, there appear the name of Mary Jane Taylor, "her mark," in the handwriting of James Wardlaw, the draughtsman ; immediately under it, the signature of the testatrix ; to the left, the signatures James Wardlaw and C. B. Rouss, as subscribing witnesses, and the date, October 15th, 1884.   On the next page is what purports to be a codicil to said will, dated the same day, and executed in a similar manner to the preceding one ; and immediately following, on the same piece of paper, there appear these words :

" I appoint James Wardlaw my sole executor.

MARY JANE TAYLOR,<br>her + mark.

Witness—                          MARY JANE TAYLOR."

C. B. ROUSS,
BRIDGET MURPHY."

The will was drawn by a layman not accustomed to drawing wills, but he was an intelligent man, who sufficiently understood the statutory requirements for the proper execution of a will.

While the testimony of C. B. Rouss, one of the subscribing witnesses, in reference to the order in which it was executed was somewhat conflicting, still after he heard the testimony of the other witnesses, he corrected his testimony by stating that the paper containing the three signatures of the testatrix was all signed together, after the whole document had

been written.    This is confirmed by Mr. Wardlaw and Mrs. Murphy, the other subscribing witnesses. It is well settled that, where one of the witnesses proving a will shows that all of the statutory requirements have been complied with, it is sufficient, even though the other one denies that such was the case (Rugg v. Rugg, 83 *N. Y.*, 592; Kinne v. Kinne, 2 *T. & C.*, 391; Matter of Bogart, 20 *N. Y. Week. Dig.*, 141).

The fact appears that Mrs. Taylor wanted to make her will, and that Mr. Wardlaw, at her request, set about drawing it.  When he had finished the first page, he believed that he had provided for all of the testatrix's bequests, and then signed the name of Mary Jane Taylor, "her mark."   But before its execution he ascertained that he had omitted some bequests, and then continued on the next page to provide for them, and when he had thus provided, he again signed the name of Mary Jane Taylor, "her mark," at the end thereof.   Then finding that he had not provided for an executor, he asked the testatrix if he should be appointed, and she replied, "yes."   Thereupon he added the clause appointing himself as executor, and again signed the name of Mary Jane Taylor, "her mark," at the end thereof ; after which, he read the whole will to Mrs. Taylor and asked her to make her mark at the several places indicated.   She appeared indignant, and said that she would write her name, which she proceeded to do, in the three places indicated, as fast as she could, one after the other.   She then declared the whole docu-

ment to be her last will and testament, and requested the subscribing witnesses to witness it.

On the first page of the document, there are two insignificant bequests to the subscribing witnesses, Wardlaw and Rouss, from which it might be argued that the testatrix had been influenced by them in making the same, but I think that the character and position of these persons, and the fact that they were intimate friends for many years, rebut the inference that any influence had been exercised by them ; and show that the testatrix in so doing desired to express her gratitude by giving them small mementos as souvenirs to them.

While the will is rather inartificially drawn, and the testimony in reference to its execution is somewhat conflicting, still, I am of the opinion, from the document propounded and the testimony in the whole case, that even the last execution is sufficient, and that the whole paper is one entire and harmonious will, and should be admitted to probate as the last will and testament of Mary Jane Taylor, deceased.

Decreed accordingly.